IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

RALPHFIELD HUDSON,

                Plaintiff,                OPINION AND ORDER

    v.                                          07-cv-355-bbc

UNITED STATES OF AMERICA,

                Defendant.

---

      This is a civil action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-1680. Plaintiff Ralphfield Hudson alleges that Tina Spence, the chief pharmacist at the Federal Correctional Institution in Oxford, Wisconsin, failed to provide him medication in a dose adequate to control his seizure condition. Originally, plaintiff brought a Bivens action against Spence and several other defendants. I allowed petitioner to proceed on his Eighth Amendment claim against Spence, Aug. 8, 2007 Opin. and Order, dkt. #9, at 12, but then found that the claim had to be dismissed because the Federal Tort Claims Act provided the exclusive remedy for plaintiff's claim. Feb. 8, 2008 Opin. and Order, dkt. #26, at 2-3. Later, after plaintiff had exhausted his administrative remedies under the Federal Tort Claims Act, I granted his request to reopen the case and amend his complaint to include a claim under that statute. Aug. 25, 2008 Order, dkt. #32. Because plaintiff did not include

1

a proposed amended complaint with his motion to reopen, I allowed him to proceed on his original complaint and ordered that the United States be substituted as a defendant in place of former defendant Spence.  Id.

Defendant United States has now moved for summary judgment, arguing that plaintiff cannot prove his case without expert testimony establishing the requisite level of care or causation.  Two preliminary observations are in order.  First, the focus of the motion is whether the decision by FCI-Oxford medical staff to lower the dosage of plaintiff's anti-seizure medication from 260 milligrams to 200 milligrams fell below the requisite standard of care.  Although plaintiff has adduced no evidence that Spence, a pharmacist, was responsible for making this decision or for prescribing medication, defendant has not taken the position that Spence lacked any role in the decision.  Perhaps this is because Spence's duties as chief pharmacist include reviewing prescriptions for therapeutic appropriateness, proper dosage and adverse drug reactions, among other things.  Position Description, Chief Pharmacist, Plt.'s Resp. to Def.'s PFOF, dkt. #51, exh. 3.  Alternatively, defendant's approach may simply be a tacit acknowledgment that under the Federal Tort Claims Act, the government  is vicariously liable for any employee negligence, no matter who committed it. Accordingly, even though I question whether a pharmacist would be required to adhere to the standard of care that would apply to the *prescription* of medication (as opposed to

2

dispensing it), I have followed the parties' lead and assumed that Spence had at least some role in the decision at issue in this case.

Second, most of plaintiff's responses to defendant's proposed findings of fact are improper. For example, he has disputed some of defendant's proposed facts, most of which are drawn from Spence's affidavit, on the ground that Spence did not provide any supporting documentation. However, Spence testified that her affidavit was made from her own personal knowledge and a review of plaintiff's medical records. So long as an affiant's statements are made from personal knowledge, she need not provide supporting documentation. To the extent that plaintiff attempts to dispute other facts, he does so largely by making conclusory assertions about what the evidence shows rather than citing any admissible evidence that refutes the proposed fact. Such assertions are insufficient to create a dispute of material fact.

Defendant's motion will be granted. Because no ordinary person could conclude from common experience that lowering the dosage of plaintiff's anti-seizure medication by 60 milligrams was not within the standard of practice at the time treatment was provided, plaintiff was required to adduce expert testimony to this effect. Spence's testimony does not establish the standard of care.

From the parties' proposed findings, I make the following findings of fact for the purpose of deciding the instant motion for summary judgment.

3

FACTS

At all times relevant to this lawsuit, plaintiff Ralphfield Hudson was an inmate at the Federal Correctional Institution in Oxford, Wisconsin. Tina Spence is a commissioned United States Public Health Officer. Since August 1998, Spence has been assigned to the Health Services Department of the Federal Correctional Institution in Oxford as the chief pharmacist. Among Spence's duties as chief pharmacist is to review and fill prescriptions written by the medical staff at the institution.

On January 23, 2006, plaintiff was transferred from the United States Penitentiary in Terre Haute to FCI-Oxford. Upon arrival, medical staff reviewed his records and noted he had a history of multiple medical problems, including a seizure disorder. Plaintiff had been prescribed 260 milligrams daily of the drug phenytoin (the generic name for Dilantin) for his seizure disorder.

On January 25, 2006, a physician assistant at FCI-Oxford wrote new prescriptions for plaintiff's medications. At the time, FCI-Oxford had only 100 milligram capsules of phenytoin in stock. Because inmates are transferred on a regular basis and, for cost and space reasons, Bureau of Prisons pharmacies do not always stock the same medications in the same dosages, it is not uncommon for a receiving institution to lack the correct dose of a medication or even the same medication that an inmate was taking at his previous

4

institution. Accordingly, a decision had to be made whether to lower plaintiff's daily dosage from 260 to 200 milligrams or to increase it to 300 milligrams.

Phenytoin has a narrow therapeutic range or index, which also means a narrow margin of safety. The therapeutic range is the range of patient serum concentrations within which a pharmacologic response is produced and adverse effects prevented. Medical staff opted to prescribe phenytoin to plaintiff at a dose of 200 milligrams instead of 300 milligrams because of the drug's narrow therapeutic range. 200 milligrams was the safer dose of phenytoin at which to start. In general, higher levels are more likely to result in undesirable pharmacologic effects. Spence reviewed and filled this prescription as ordered.

Medical staff noted that there were no records establishing plaintiff's current phenytoin level and that plaintiff had been in transit from another facility. Because it takes two to four weeks for a patient to reach his new phenytoin level, medical staff ordered plaintiff's blood to be drawn in four weeks. The blood draw on February 27, 2006 showed that plaintiff's phenytoin level was normal to low, at 9 mcg/mL. Medical staff decided not to change plaintiff's dose because he had not experienced any seizure activity and many patients achieve seizure control at lower serum concentrations.

On March 22, 2006, staff notified a nurse that plaintiff was having a mild seizure. The nurse reported that he was gazing into space and making funny noises; however, there were no indications of serious seizure activity such as involuntary movements of upper or

5

lower extremities, loss of consciousness or incontinence. Plaintiff told the nurse he remembered everything and felt fine. The physician assistant on call ordered an extra dose of phenytoin, in addition to his usual 200 milligrams, and told plaintiff to report to sick call the next morning for followup evaluation and assessment. Plaintiff failed to report to this appointment on March 23, 2006.

On March 24, 2006, plaintiff requested a refill of his phenytoin prescription. A prescription was written for 300 milligrams daily. Repeat laboratory testing was ordered to determine how the new dosage would affect his phenytoin level.

Plaintiff's blood was drawn on April 20, 2006. The phenytoin level was high at 23 mcg/mL, with "normal" being somewhere between 10-20 mcg/mL. Because of plaintiff's slightly higher phenytoin level, a new prescription for 260 milligrams daily was written on May 25, 2006. In order to provide this dosage, the pharmacy had to place an order for 30 milligram capsules of phenytoin because it did not stock that size. While waiting for the new prescription, plaintiff was told to alternate his daily dosages between 200 and 300 milligrams.

The new dose of 260 milligrams was started on June 6, 2006. All phenytoin levels drawn thereafter were in a therapeutic range. After the March 22, 2006 incident, plaintiff had no further seizure activity.

6

Under the preliminary pretrial conference order, plaintiff's deadline for disclosing expert witnesses was February 16, 2009. Plaintiff did not disclose any expert witnesses.

OPINION

The Federal Tort Claims Act provides a remedy for any individual seeking recovery for damages caused by the negligence or wrongful act of an employee of the federal government. 28 U.S.C. §§ 2671-2680. The coverage of the act extends to federal prisoners, who may sue for injuries caused by the negligence of prison employees. United States v. Muniz, 374 U.S. 150 (1963). Under the Act, the United States may be held civilly liable for the torts of its employees "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

Because the Act incorporates the law of the state in which the tort was committed, 28 U.S.C. § 1346(b), plaintiff's claims are governed by Wisconsin law. Thus, to prevail on his claim for negligence, plaintiff must show that defendant breached a duty owed to him and that the breach was a cause of his injuries. Gil v. Reed, 381 F.3d 649, 658 (7th Cir. 2004) (Gil I); Paul v. Skemp, 242 Wis. 2d 507, 625 N.W. 2d 860, 865 (2001). To defeat a motion for summary judgment, plaintiff must show that there is a general issue of material fact as to each of these elements. Harney v. Speedway SuperAmerica, LLOC, 526 F.3d 1099, 1103-04 (7th Cir. 2008); Fed. R. Civ. P. 56(c). To do this, he must adduce enough

7

evidence to allow a reasonable jury to find in his favor.  Walker v. Sheahan, 526 F.3d 973, 977 (7th Cir. 2008).  When determining whether a genuine issue of fact exists, the court must construe all facts in the light most favorable to plaintiff and draw all reasonable and justifiable inferences in favor of plaintiff.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

In Wisconsin, a plaintiff cannot satisfy his burden of proving that a physician was negligent without adducing expert testimony establishing the requisite degree of care and skill.  Christianson v. Downs, 90 Wis. 2d 332, 338, 279 N.W. 2d 918, 921 (1979).  (Wisconsin's rule differs little, if at all, from the equivalent federal rule.  Gil v. Reed, 535 F.3d 551, 558 n.2 (7th Cir. 2008) (Gil II) (noting that if difference existed between Wisconsin and federal expertise rule, it was "subtle").)  As the Wisconsin Supreme Court explained in Christianson, 90 Wis. 2d at 338, 279 N.W. 2d at 921:

> A doctor is not an insurer or guarantor of the correctness of his diagnosis; the requirement is that he use proper care and skill.  The question is not whether the physician made a mistake in diagnosis, but rather whether he failed to conform to the accepted standard of care.

(Internal citations omitted.).  See also Wis JI-Civil 1023 ("A [practitioner] is not negligent, however, for failing to use the highest degree of care, skill and judgment or solely because a bad result may have followed her care and treatment.").  Thus, "[u]nless the situation is one where the common knowledge of laymen affords a basis for finding negligence," expert

8

medical testimony is required to establish the requisite level of care and skill.  Id.  Examples of cases not requiring expert testimony are those in which a surgeon leaves a sponge or other foreign object inside a patient during surgery or removes the wrong organ or body part. Christianson, 90 Wis. 2d at 339, 279 N.W. 2d at 921.  See also Gil I, 381 F.3d at 659 (where evidence permitted inference that doctor refused out of malice to prescribe antibiotic to plaintiff with serious infection, *res ipsa loquitur* could apply).

In Christianson, the estate of a girl who died from measles and related complications alleged that the girl's family doctor had been negligent in failing to treat her with gammaglobulin to prevent her from contracting measles from her twin brother.  The plaintiff's expert testified that it would be negligence not to prescribe gammaglobulin to a sibling when a diagnosis of measles has been made in a sibling, but he never testified that it was negligent for the defendant doctor not to have made a diagnosis of measles in her brother.  The plaintiff never filled in this evidentiary gap.  The defendant himself never testified that he had made a diagnosis and if so, what it was.  The state supreme court held that in these circumstances, the plaintiff had failed to prove its case.  Noting that "[m]easles is a disease more within the realm of common experience that many others," id. at 339, 279 N.W.2d at 921, the court nonetheless held that plaintiff's failure to "to establish either that measles was diagnosed or that, regardless of what diagnosis was actually made, measles

9

should have been diagnosed" meant that the trial court had acted properly in dismissing the case. Id. at 338, 279 N.W.2d at 921.

In this case, it is clear that the prescription of phenytoin for the treatment of seizure disorders is not a matter of common knowledge or within the experience of laymen. Deciding what dosage of a drug is effective to treat a condition is more akin to accurately diagnosing a disease than it is to leaving a foreign object in a patient after surgery. Without any expert testimony regarding the standard of care regarding the prescription of phenytoin for the treatment of seizure disorders, plaintiff cannot prevail on his claim.

Plaintiff does not dispute that he does not have his own expert to testify regarding the requisite standard of care and skill. Instead, he argues that Spence's testimony provides the requisite evidence. In Gil I, the court of appeals held that the plaintiff could rely on his treating physicians to establish the standard of care, even though those physicians were defendants or agents of defendants. Id. at 660.

First, plaintiff points out that Spence admitted that one of her major duties and responsibilities was to insure that proper laboratory monitoring was being performed. He then makes the conclusory assertion that "Spence neglected to ensure that proper laboratory monitoring was being performed before the lowering of Plaintiff's daily dosage of 260mg to 200mg." Br. in Resp. to Mot. for Summ. Judg., dkt. #50, at 4. Plaintiff appears to be arguing that it was negligent for Spence to have failed to order laboratory testing of

10

plaintiff's blood before lowering his dosage of phenytoin from 260 to 200 milligrams. However, the fact that it was Spence's job to insure that "proper laboratory monitoring was being performed" does not establish that she had a duty to order such testing before dispensing only 200 milligrams of phenytoin. In fact, as defendant points out, plaintiff's dosage was maintained at 200 milligrams even after plaintiff's phenytoin levels were obtained approximately a month later. This defeats plaintiff's suggestion that proper laboratory testing would have shown that the 200 milligram dosage was too low. Plaintiff's bald assertion that the decision to lower his dosage without testing fell below the standard of care is insufficient to create a material dispute of fact.

Second, plaintiff relies on Spence's testimony that "clinicians should never assume that serum concentrations within the therapeutic range will be either safe or effective." Dec. of Tina Spence, dkt. #44, ¶8. Plaintiff argues that medical staff made such an improper assumption when they decided that 200 milligrams as opposed to 300 milligrams was the appropriate dosage of phenytoin to administer to plaintiff. I do not understand plaintiff's argument. "Serum concentration" refers to the level of the drug in the plaintiff's blood, not the drug's dosage. As plaintiff points out, staff did not know plaintiff's serum concentration at the time they decided to prescribe phenytoin at a dosage of 200 milligrams. Accordingly, this argument appears to be little more than a repeat of the argument I rejected above. No reasonable fact finder could infer from Spence's statement regarding serum concentrations

11

that prison staff breached any duty of care in choosing the lower dosage of phenytoin that was available (200 milligrams) instead of the higher dosage (300 milligrams).

Finally, to the extent that plaintiff suggests that staff were negligent because they simply "assumed" that 200 milligrams would be an effective dose, he is incorrect. Spence testified that staff made a reasoned decision to begin with that dosage because of the potential adverse effects that could be caused if the dosage was too high at 300 milligrams. Plaintiff has adduced no evidence to call Spence's testimony into question. In contrast to Gil, 381 F.3d at 661, in which there was evidence from which a jury could infer that a physician assistant failed to provide plaintiff a prescribed antibiotic for a serious infection "for no reason other than spite," here there is no evidence suggesting any evil motive or deliberate indifference to plaintiff's medical condition by any members of the medical team when they lowered plaintiff's phenytoin dosage. Accordingly, plaintiff cannot prove his case absent expert testimony establishing that the care provided to him was not within the standard of practice at the time treatment was provided. Because he has failed to adduce such testimony, defendant is entitled to summary judgment. The fact that a bad result followed the lowering of his phenytoin dosage is not enough to show that medical staff failed to adhere to the requisite standard of care.

ORDER

IT IS ORDERED that the motion of defendant United States of America for summary judgment, dkt. #40, is GRANTED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 20th day of July, 2009.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge

13